IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PHILLIP C. GROSKLOS, | : | 1:12-cv-2088 |
| | : | |
| Plaintiff, | : | |
| v. | : | Hon. John E. Jones III |
| | : | |
| YORK RAILWAY COMPANY, *et al.*, | : | |
| | : | |
| Defendants. | : | |

### MEMORANDUM AND ORDER

### February 18, 2014

**THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:**

Presently before the Court is Defendants' Motion for Summary Judgment (Doc. 15). For the reasons set forth below, the motion shall be denied.

**I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff Philip C. Grosklos began his railroad career in 1979 as an employee of the Maryland and Pennsylvania Railroad. (Doc. 17 ¶ 3). From December 1, 1999 through November 9, 2009, he was employed by Defendant York Railway. (Doc. 17 ¶ 4). Throughout the course of his railroad career, Grosklos worked primarily as a car inspector. (Doc. 17 ¶ 5).

Plaintiff filed this action on October 18, 2012 against the following

Defendants: Genesee & Wyoming, Inc.; Rail Link, Inc.; and York Railway Company. Plaintiff's Complaint (Doc. 1) alleged, pursuant to the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51, *et seq.*, that he developed injuries to his knees and back as a result of his employment with Defendants.

Defendants filed a Motion for Summary Judgment (Doc. 15) and brief in support thereof (Doc. 16) on August 1, 2013. Plaintiff filed a brief in opposition (Doc. 19) on August 20, 2013 and Defendants filed their reply brief (Doc. 21) on September 4, 2013. Thus, the motion has been fully briefed and is ripe for disposition.

Additionally, the parties have stipulated that York Railway Company is the proper named Defendant in this matter and that Plaintiff's claims as to Defendants Genesee & Wyoming, Inc. and Rail Link, Inc. are to be dismissed. (See Doc. 17 ¶ 1 n. 1 (citing Doc. 17, Ex. A at 5:1-13)). Accordingly, we shall honor the wishes of the parties and order the dismissal of Plaintiff's claims against Defendants Genesee & Wyoming, Inc. and Rail Link, Inc., leaving York Railway Company as the sole Defendant.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate if the record establishes "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as

a matter of law." Fed. R. Civ. P. 56(c). Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant meets this burden by pointing to an absence of evidence supporting an essential element as to which the non-moving party will bear the burden of proof at trial. *Id.* at 325. Once the moving party meets its burden, the burden then shifts to the non-moving party to show that there is a genuine issue for trial. Fed. R. Civ. P. 56(e)(2). An issue is "genuine" only if there is a sufficient evidentiary basis for a reasonable jury to find for the non-moving party, and a factual dispute is "material" only if it might affect the outcome of the action under the governing law. *Anderson v. Liberty Lobby, Inc*, 477 U.S. 242, 248-49 (1986).

In opposing summary judgment, the non-moving party "may not rely merely on allegations of denials in its own pleadings; rather, its response must ... set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). The non-moving party "cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial." *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000). Arguments made in briefs "are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion." *Jersey Cent.*

*Power & Light Co. v. Twp. of Lacey*, 772 F.2d 1103, 1109-10 (3d Cir. 1985). However, the facts and all reasonable inferences drawn therefrom must be viewed in the light most favorable to the non- moving party. *P.N. v. Clementon Bd. of Educ.*, 442 F.3d 848, 852 (3d Cir. 2006).

Summary judgment should not be granted when there is a disagreement about the facts or the proper inferences that a factfinder could draw from them. *Peterson v. Lehigh Valley Dist. Council*, 676 F.2d 81, 84 (3d Cir. 1982). Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; there must be a *genuine* issue of *material* fact to preclude summary judgment." *Anderson*, 477 U.S. at 247-48.

**III.   DISCUSSION**

   **A.   Federal Employers' Liability Act**

FELA provides that "[e]very common carrier by railroad ... shall be liable in damages to any person suffering injury while he is employed by such carrier ... for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier...." 45 U.S.C. § 51 (1986). FELA was intended to shift part of the "human overhead" of doing business from employees to their employers. *Tiller v. Atlantic Coast Line R. Co.,* 318 U.S. 54,

58–59 (1943); *see also Consolidated Rail Corp. v. Gottshall,* 512 U.S. 532, 542 (1994). Courts have "liberally construed" FELA to further Congress' remedial goal. *Gottshall*, 512 U.S. at 543. This includes the use of a relaxed standard of causation, under which "the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought." *Rogers v. Missouri Pacific R. Co.*, 352 U.S. 500, 506 (1957). "That FELA is to be liberally construed, however, does not mean that it is a workers' compensation statute." *Gottshall,* 512 U.S. at 543. The Supreme Court has "insisted that FELA 'does not make the employer the insurer of the safety of his employees while they are on duty. The basis of his liability is his negligence, not the fact that injuries occur.'" *Id.* (quoting *Ellis v. Union Pacific R. Co.,* 329 U.S. 649, 653 (1947)). Thus, a plaintiff bringing a FELA action must still demonstrate the four common law elements of negligence: duty, breach, causation, and damages. *See Walsh v. Consolidated Rail Corp.*, 937 F.Supp. 380, 383 (E.D.Pa. 1996).

    **B.**     **Statute of Limitations**

Railroad employees must bring FELA actions "within three years from the day the cause of action accrued." 45 U.S.C. § 56. However, for injuries that occur

over time, such as repetitive stress injuries, the specific date of injury is difficult to determine. In this situation, the Supreme Court found that when the specific date of injury cannot be determined because an injury results from continual exposure to a harmful condition over a period of time, a plaintiff's cause of action accrues when the injury manifests itself. *Urie v. Thompson,* 337 U.S. 163, 170 (1949). Thus, the cause of action for a repetitive stress injury, under FELA, accrues when a plaintiff has knowledge of both the existence and cause of his injury. *United States v. Kubrick,* 444 U.S. 111, 119 (1979).

### C. Defendants' Motion for Summary Judgment

In its motion and briefs, Defendant cites two grounds for summary judgment: (1) that Plaintiff failed to file his claim for injuries to his left knee and lower back within the applicable statute of limitations and (2) that Plaintiff did not sustain any injury to his right knee until after his employment with York Railway Company ("York Railway") had ended. (Doc. 15 at 2). Defendant argues that these deficiencies derail Plaintiff's claims. Plaintiff disagrees with this train of thought, contending that he has produced sufficient evidence suggesting that his injuries occurred during his employment with York Railway and that he filed the instant case within three years of discovering those injuries. We shall now

examine each of his alleged injuries to determine whether this is the end of the line for Plaintiff's case or whether it is fit to continue chugging along toward trial.

### 1.     Plaintiff's Left Knee

It is undisputed that Plaintiff suffered a work-related injury to his left knee in the spring of 2006, over six (6) years before the filing of the suit now before the Court. (Doc. 17 ¶ 6; Doc. 20 ¶ 6). In April of 2006, Plaintiff felt something happen to his knee while moving a bulkhead divider in a freight car. (Doc. 17 ¶ 6). He first sought treatment for his knee injury several months later, in October of 2006. (Doc. 17 ¶ 6; Doc. 19 at 4). He eventually underwent arthroscopic surgery on February 24, 2010 and had total left knee replacement surgery on June 12, 2013. (Doc. 19, Ex. C ¶¶ 14, 15).

Defendant argues that Plaintiff's claim regarding this injury is time-barred because Plaintiff was aware of his injury and its cause in 2006 but did not file a claim until 2012. Plaintiff has responded by citing an affidavit, filed along with his brief in opposition to the instant motion, in which his medical expert, Dr. William Launder, opines that fifty percent (50%) of Mr. Grosklos' left knee injury was caused by repetitive work-related activities with the Defendant and the remaining fifty percent (50%) was caused by other factors, including the April

2006 injury. (Doc. 19, Ex. C ¶ 17). Dr. Launder goes on to say that "[t]he portion of Mr. Grosklos' left knee injury that was caused by his work-related activities is in the form of degenerative joint disease that is distinct and separate from the portion of his injury caused by the other factors, including the April, 2006 work-related injury." (Doc. 19, Ex. C ¶ 17).

Because there remains a disputed issue of fact as to whether Plaintiff suffered a separate and distinct long-term degenerative injury in addition to his April 2006 injury, we cannot grant summary judgment at this time. We see no evidence to suggest that Plaintiff knew of his alleged degenerative joint disease more than three (3) years before he filed suit. Whether such an injury exists on its own, as opposed to being a mere continuation of the clearly time-barred April 2006 injury, is not a question of law but rather a question of fact. We cannot say with confidence that no reasonable jury could believe Dr. Launder's medical opinion and accordingly determine that Plaintiff suffered from degenerative joint disease separate and distinct from his 2006 injury and that he filed the instant action within three years of discovering that injury.

### 2.     Plaintiff's Back

Plaintiff suffered an acute injury to his back on January 21, 2009 while replacing an air line underneath a rail car. (Doc. 17 ¶ 10; Doc. 20 ¶ 11). Afterward, Plaintiff sought treatment at an emergency room. (Doc. 17 ¶ 12). Plaintiff also has a history of suffering from occasional back spasms throughout his railroad career. (Doc. 17 ¶ 15).

Defendant argues that Plaintiff's claim regarding his back injury is time-barred because Plaintiff was aware of his back injury and its cause in January of 2009 but failed to file suit until October of 2012.  Further, Defendant points out that Plaintiff experienced muscle spasms in his back, believed them to be caused by work-related activities, and sought treatment for those spasms as far back as the 1980s. (Doc. 17 ¶ 15).  Plaintiff has responded by again citing the affidavit of Dr. William Launder, opining that seventy-five percent (75%) of Mr. Grosklos' low back injury was caused by repetitive work-related activities with the Defendant and the remaining twenty-five percent (25%) was caused by other factors, including the January 2009 injury. (Doc. 19, Ex. C ¶ 27).  Dr. Launder goes on to say that "[t]he portion of Mr. Grosklos' low back injury that was caused by his work-related activities is in the form of degenerative joint disease that is distinct

and separate from the portion of his injury caused by the other factors, including the January 21, 2009 work-related injury." (Doc. 19, Ex. C ¶ 27).

Similar to Plaintiff's left knee injury claim, there remains here a disputed issue of fact as to whether Plaintiff suffered a separate and distinct long-term degenerative injury in addition to his January 2009 injury. Whether such a degenerative injury exists on its own, as opposed to being a mere continuation of the clearly time-barred January 2009 injury, remains an unresolved factual question. There is also some uncertainty regarding Plaintiff's history of back spasms and its relationship to Plaintiff's claims. It appears that Plaintiff sought treatment for these spasms, but the link between "spasms" and "degenerative joint disease" is unclear, aside from the obvious similarity that both allegedly occurred in Plaintiff's back. Even if Plaintiff knew that he was suffering from muscle spasms in his back, it not clear that such knowledge would have put Plaintiff on notice of the alleged degenerative joint disease. He sought treatment for his muscle spasms, but his alleged degenerative disease was apparently never discovered by the medical personnel charged with treating him at those times. Assuming that Dr. Launder's medical opinion is accurate and that Plaintiff does in fact suffer from the alleged degenerative disease which was previously undiagnosed, it is entirely possible that the degenerative injury did not become

discoverable until some later date. Therefore, based on the facts available at this time, we cannot rule as a matter of law that Plaintiff's muscle spasms and subsequent treatment of those spasms were clearly sufficient to trigger the discovery rule and start the clock on the statute of limitations.

### 3. Plaintiff's Right Knee

It is undisputed that Plaintiff suffered a non-work-related injury to his right knee in 2011 or 2012 while walking up a concrete embankment near his home. (Doc. 17 ¶¶ 20-21; Doc. 20 ¶ 16). Defendant argues that it cannot be liable for Plaintiff's right knee because that injury took place after Plaintiff's employment with York Railway had ended and he never previously had any problems with his right knee while working on the railroad. Plaintiff's medical expert, Dr. Launder, however, has opined that fifty percent (50%) of Plaintiff's right knee injury is in the form of degenerative joint disease caused by work-related activities, with the other fifty percent (50%) attributable to other factors including the embankment incident in 2011 or 2012. (Doc. 20 ¶ 17).

Because there remains a disputed question of fact as to whether Plaintiff suffered a separate and distinct long-term degenerative work-related injury in addition to his later non-work-related injury, we will not grant summary judgment

at this time. It does not seem implausible that such a degenerative disease might only be discovered post-employment when it contributes to bringing about a much more acute and obvious trauma. Of course, if Defendant is skeptical of the opinions contained in Dr. Launder's affidavit regarding the existence and causes of Plaintiff's alleged injuries and believes any of those opinions to be inconsistent with previous statements or to have suspiciously appeared only after the filing of a motion for summary judgment, it is welcome to question Dr. Launder's motives and credibility at trial and confront him with any statements it perceives to be contradictory. Although Defendant may ultimately convince a jury to take its side regarding the nature and causation of Plaintiff's injuries, we cannot now rule as a matter of law that no reasonable jury could instead believe Dr. Launder and side with Plaintiff.

## IV.    CONCLUSION

For the foregoing reasons, we shall deny Defendants' Motion for Summary Judgment (Doc. 15). We shall also order the parties to stipulate to a trial month.

**NOW, THEREFORE IT IS HEREBY ORDERED THAT:**

1.   Pursuant to the parties' stipulation, Plaintiff's claims against Defendants Genesee & Wyoming, Inc. and Rail Link, Inc. are

**DISMISSED**. The Clerk is directed to terminate Defendants Genesee & Wyoming, Inc. and Rail Link, Inc. from the docket.

2. Defendants' Motion for Summary Judgment (Doc. 15) is **DENIED**.

3. Within twenty (20) days of the date of this Order, counsel shall file a letter on the docket stipulating to a trial month in the calendar year 2014.

s/ John E. Jones III  
John E. Jones III  
United States District Judge